New York County.—Hon. RASTUS. S. RANSOM, Surrogate.— January, 1889.

MATTER OF MACPHERSON.

*In the matter of the application for the probate of the will of* Sarah J. Macpherson, *deceased.*

Where the decedent was an excitable, sickly woman who, on slight provocation, and often with no apparent cause, fell into fits of passion, and

displayed many symptoms of a diseased mind, but who was sometimes for continued periods in possession of her faculties, made a reasonable will which corresponded with her previously expressed intentions, and she having at the time of the *factum*, according to the testimony of the subscribing witnesses, mental capacity for making a will, the will should be admitted to probate.

APPLICATION for the probate of the will of Sarah J. Macpherson, deceased.

BLAIR & RUDD, *for proponent.*

JAMES R. ANGEL, *for contestant.*

THE SURROGATE.—A perusal of the testimony taken in this case must lead any mind to the conclusion that the testatrix, for a considerable period before her death, was an excitable, sickly woman, who, on slight provocation and often with no apparent cause, flew into fits of passion and displayed many symptoms of a diseased mind. Conversation upon topics connected with certain of her relatives, invariably excited her to some outburst. No person in the enjoyment of her senses would have composed the letter which appears to have been left at the house of Judge Angel, by the deceased. Nevertheless, the unanimous testimony of the witnesses (with possibly the single exception of Mrs. Angel), is to the effect that, while these manifestations of an unhealthy mind were chronic from the date of her first illness, she was sometimes, for continued periods of time, in the possession of her faculties.

In the light of these facts, the law as laid down in the case of Gombault v. Public Administrator (4 *Bradf.* 226), might be taken as the text upon which to write a decision of this cause, viz.: "A will made in the

lucid interval may be valid; but the facts establish-
ing intelligent action must be shown.    The nature
and character of the instrument as to its dispositions
have great influence; and it is important to ascertain
whether they harmonize with the decedent's affections
and intentions otherwise expressed."

In the case at bar, the subscribing witnesses prove
the due execution of the will, and that at the time,
the testatrix had mental capacity to make a will.
One of the subscribing witnesses was a law clerk and
presumably familiar with the legal requisites.

The will was drawn by Mr. Rudd after an interview
with testatrix, who called at his office for the purpose
of giving instructions therefor.    Thereafter he re-
ceived a note from testatrix containing substantially
similar directions, and the will was drawn accordingly,
and sent to her by a messenger who superintended its
execution, at the house of decedent.    At this inter-
view with Mr. Rudd, he testifies that she conversed
rationally upon the subjects introduced.    That the
will is in accord with her expressed intentions, appears
by the testimony of her brother, as well as by the
evidence of Mr. Rudd.

In the case of Chambers v. Queen's Proctor (cited
in Gombault v. Public Administrator, *supra*), the de-
cedent died by his own hand the day after he executed
the will; there had been indications of insanity im-
mediately before and after its execution.    The court
said : " If done during a lucid interval, the act will be
valid, notwithstanding previous and subsequent in-
sanity; " and the will was upheld mainly on the ground
of the reasonable dispositions contained in the instru-

ment, the absence of proof of delusion at the time of the *factum*, and the rational manner in which the act was performed.

Every incident specified in that case is supplied here for the purpose of supporting the will; and I am of opinion that the will should be admitted to probate.